## Matney, et al. v. Ironton Lumber Company.

(Decided February 6, 1920.)

### Appeal from Pike Circuit Court.

Logs and Logging—Contract for Delivery of Timber.—A made a contract with B for timber. B delivered not only his own timber but also timber owned by B and C as partners, with C's knowledge and consent, and was paid by A under the terms of his contract for all timber delivered. B and C seek to recover from A. on a separate accounting for the partnership timber. Evidence. examined and held that the partnership had no contract with or· claim against A.

STRATTON & STEVENS and WHEELER & WHEELER for appellants.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The judgment appealed from sustained appellee's plea of payment in full of the claim of $3,447.50, which appellant's J. H. Matney and J. N. Bevins, as partners, asserted against it for timber sold and delivered.

By written contract dated September 5, 1912, Bevins agreed to deliver to appellee at Catlettsburg, Ky., about a thousand logs at stipulated prices for various kinds and grades, appellee agreeing to advance to Bevins on this timber "$300.00 and $200.00 in thirty days from date, and then about November 1st they are to advance whatever second parties (appellee) think sufficient, and about every thirty days from then on."

This contract covered timber owned by Bevins in three or four separate tracts adjacent to Big Sandy River "from Grapevine down to the forks and from the forks down to Chloe Creek."

Shortly after Bevins made this contract he acquired a half interest in some timber on Harold's Branch, the other half of which was owned by Matney, and admittedly this partnership timber was delivered by Bevins to appellee under the terms and conditions of this written contract above referred to.

The evidence shows conclusively that Bevins made the deliveries and received advancements on and settlements for this timber along with and in the same manner as he did his own timber; that appellee paid to Bevins all and more than was due for all timber delivered to it, including the partnership timber. But it also appears that if the partnership timber be considered separately Bevins received as payments on it approximately $1,400.00 less than under the contract was due therefor, but received more than that amount in excess of what was due for timber owned by him individually.

Since Bevins was, at the time this controversy arose, insolvent and largely indebted to Matney on partnership accounts, if appellee must separate its accounts and settle separately with Bevins and the partnership Matney will recoup his advancements to the firm and appellee will lose its overpayments to Bevins on timber owned by him individually.

It is appellant's contention that these accounts should have been separated and that the court erred in treating partnership timber as a part of the one transaction between appellee and Bevins. That this resulted in permitting appellee to credit on its claim for an overpayment to Bevins the partnership debt against it, in violation of the well-known rule that a creditor of a member of a partnership cannot offset such a claim against his indebtedness to the firm, but only against the debtor member's interest in the firm's assets.

It is obvious, however, that Matney could not invoke this rule of law in his behalf and to the detriment of appellee, if, as claimed by appellee, it had no separate contract with the partnership, but bought all the timber under the one written contract from Bevins, who was permitted by his partner, Matney, to treat as his own and deliver the partnership timber to appellee under its written contract with him.

It was upon this question of fact as to whether there was a separate contract between appellee and the partnership for the Harold Creek timber that the decision

of the chancellor was based. Proof was taken before the master, who found from the evidence that all of the timber, including this partnership timber, was sold and delivered by Bevins to appellee under the written contract between them and to which Matney and Bevins, as partners, were not parties. Upon exceptions by appellants the chancellor confirmed the master's finding. A careful consideration of the evidence convinces us that the chancellor did not err in so doing. Only Bevins and Matney testified upon their side of this question, and Richey and Henry, officers and employees of the appellee, upon the other.

Even the testimony of appellants is, on the whole, confirmatory of that of appellee's witnesses, that it was agreed by all parties that this timber should be included and was delivered under the Bevins contract. All of the circumstances are corroborative of this fact. Appellee kept no account with the firm, but entered all deliveries and payments, regardless of from what tract the timber came, in the one account it kept with Bevins individually. All payments were made to Bevins by check. Bevins attended to all of the business as though it were his own. Matney was present on several occasions when deliveries were made, and never requested that separate account he kept or that payments be made to the partnership for its timber, and it was nearly a year after all the timber had been delivered that in this litigation, which arose about another matter, Matney, in the partnership name, first indicated a desire for a separate accounting for the partnership timber, or intimated that the partnership had any contract with or claim against appellee.

It seems quite clear that all parties understood and agreed that appellee was dealing with Bevins only and individually, and that Matney was looking to Bevins and not to appellee for his money during the time the business was being transacted. The estimates and payments were made to Bevins by appellee upon total deliveries quite irrespective of from what tracts they originated; and it would be extremely inequitable after this had been done and Bevins had been paid in full for all deliveries under the contract made only with him, if his partner in a part of the timber thus delivered and paid for, who had aquiesced, if he had not in fact agreed, that the business should be so transacted, could come in and demand a sep-

arate accounting for that part of the timber in which he had an interest.

We are, therefore, convinced that not only the facts but the equities as well are entirely upon the side of appellee as against Matney, and that the judgment of the chancellor should be and it is affirmed.